UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| MIRASOLES PRODUCE USA, LLC, § § Plaintiff, § § VS. § § CIVIL ACTION NO. 7:22-cv-00055 TALYGAP PRODUCE, INC. d/b/a Ponce § Produce; and GUSTAVO ADOLFO § PONCE REYES, § § Defendants. § | |

## OPINION AND ORDER

The Court now considers "Plaintiff's Motion for Default Judgment with Incorporated Memorandum in Support,"[1] and the accompanying "Declaration of Ricardo Tello Pursuant to 28 U.S.C. §1746 in Support of Default Judgment."[2] Defendant is in default,[3] so Plaintiff's motion is unopposed.[4] After considering the motion, record, and relevant authorities, the Court **GRANTS** Plaintiff's motion and **AWARDS** judgment in favor of Plaintiff.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a Perishable Agricultural Commodities Act (PACA) case. Plaintiff Mirasoles Produce USA, LLC commenced this case on February 17, 2022, alleging that it sold and delivered fruits and vegetables to Defendant TALYGAP Produce, Inc. doing business as Ponce Produce, and its director Gustavo Adolfo Ponce Reyes, between June 2019 and March 2020,[5] but

---

[1] Dkt. No. 17.
[2] Dkt. No. 18.
[3] Dkt. No. 14.
[4] *See* LR7.4.
[5] Dkt. No. 1 at 7, ¶ 27.

Defendants have failed to pay for the agricultural commodities in violation of PACA.[6] Plaintiff asserts six claims: Count I against Ponce Produce for failure to maintain PACA trust, Count II against all Defendants for unlawful dissipation of trust assets, Count III against Ponce Produce for failure to pay for produce, Count IV against all Defendants for breach of fiduciary duty, Count V against Ponce Produce for breach of contract, and Count VI against all Defendants for interest and attorney fees.

Plaintiff served Defendants,[7] but neither has timely appeared or answered Plaintiff's complaint.[8] The Court accordingly ordered the Clerk of the Court to enter the clerk's entry of default under Federal Rule of Civil Procedure 55(a) against both Defendants.[9] In the instant motion, Plaintiff seeks entry of default judgment against Defendants.[10] The Court turns to the analysis.

## II. DISCUSSION

### a. Legal Standard

Obtaining a default judgment is a three-step process: "(1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment."[11] Once entry of default is made, "plaintiff may apply for a judgment based on such default. This is a *default judgment*."[12] Defendants have defaulted by failing to answer or otherwise appear in this case and the clerk has already entered default against them.[13] The only remaining question is whether the third step, entry of default judgment, is appropriate.

---

[6] *Id.* at 4, ¶¶ 9–13.
[7] Dkt. Nos. 10–11.
[8] *See* Dkt. Nos. 13–14.
[9] *Id.*
[10] Dkt. No. 17.
[11] *Bieler v. HP Debt Exch., LLC*, No. 3:13-CV-01609, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *N.Y. Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996)).
[12] *N.Y. Life Ins. Co.*, 84 F.3d at 141.
[13] Dkt. Nos. 13–14.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval, which is not lightly granted. Default judgments are a disfavored and drastic remedy, resorted to only in extreme situations such as an unresponsive party.[14] The Court will not grant default judgment automatically or as a matter of right, even if a defendant is in default.[15] Whether to grant default judgment is left to the sound discretion of the district court.[16] Adjudicating the propriety of default judgment is itself a three-step process.

First, the Court must determine whether the plaintiff's claims are well-pled and substantively meritorious.[17] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied are valid and merit judgment against the defendant.[18] When analyzing the merits of claims, the Court may assume the truth of all well-pled allegations in the plaintiff's complaint because all defaulting defendants functionally admit well-pled allegations of fact.[19] But the Court will not hold the defendants to admit facts that are not well-pled or to admit conclusions of law.[20]

Second, if the plaintiff states a well-pled claim for relief, the Court examines six factors to determine whether to grant default judgment:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.[21]

---

[14] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[15] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[16] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).
[17] *See Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015).
[18] *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[19] *Id.*; *see Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) ("Unlike questions of actual damage, which must be proved in a default situation, conduct on which liability is based may be taken as true as a consequence of the default.").
[20] *Nishimatsu Constr. Co.*, 515 F.2d at 1206.
[21] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Third, if the plaintiff's claims are meritorious and default judgment appears appropriate, the Court must determine whether the requested relief is proper. Specifically, default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[22] The Court will determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing" but the exception is when "the amount claimed is a liquidated sum or one capable of mathematical calculation."[23] When this exception applies, there is no need for an evidentiary hearing and the Court can enter default judgment on the papers.

    **b. Analysis**

        *1. Whether Plaintiff's Claims are Substantively Meritorious*

Plaintiff alleges that Defendant Ponce Produce previously operated in McAllen, Texas, under an authorized U.S. Department of Agriculture PACA license.[24] Ponce Produce contracted with Plaintiff, also a Texas company, to receive fruits and vegetables on credit and Plaintiff duly delivered the produce.[25] The "[d]ates of [t]ransactions" were June 17, 2019, through March 12, 2020, during which Plaintiff alleges that it delivered $19,582.50 in produce to Ponce Produce.[26] Despite seasonable invoices, Ponce Produce failed to pay for any transaction and all amounts remain unpaid.[27] Plaintiff's invoices included the statutory language that produce was being sold subject to the PACA trust.[28] Additionally, Plaintiff alleges that individual Defendant Gustavo

---

[22] FED. R. CIV. P. 54(c); *see also Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813 (5th Cir. 2018) (holding that rendering relief in a default judgment differs from other kinds of judgment).
[23] *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).
[24] Dkt. No. 1 at 2–3, ¶ 4.
[25] *Id.* at 3–4, ¶¶ 8–10.
[26] *Id.* ¶¶ 8–11; *accord* Dkt. No. 18 at 2, ¶ 4.
[27] Dkt. No. 18 at 2, ¶ 4; *accord* Dkt. No. 1 at 4, ¶ 13.
[28] Dkt. No. 18 at 2, ¶ 5 (citing Dkt. No. 18-1); 7 U.S.C. § 499e(c)(4).

Adolfo Ponce Reyes is "responsibly connected" to and controlled Ponce Produce and breached his fiduciary duty to make full payment under PACA.[29]

> In order to recover from a PACA trust, an alleged trust beneficiary must demonstrate by a preponderance of the evidence that:
>
> i. the goods sold were perishable agricultural commodities;
>
> ii. the purchaser of the perishable agricultural commodities was a commission merchant, a dealer, or broker;
>
> iii. the transaction occurred in interstate or foreign commerce;
>
> iv. full payment on the transaction has not been received by the supplier, seller or agent;
>
> v. the seller or supplier preserved its trust rights by giving written notice to the purchaser; and
>
> vi. the time allotted for acceptance of payment did not exceed the maximum amount prescribed by PACA.[30]

Plaintiff sold perishable agricultural fresh fruits and vegetables,[31] such as tomatillo, nopal, and cilantro,[32] to Defendant "dealer and commission merchant" of agricultural commodities.[33] Plaintiff alleges that the transaction occurred in interstate commerce,[34] and Plaintiff's invoices disclose that most if not all of Plaintiff's produce is from Mexico and therefore in foreign commerce.[35] Plaintiff alleges that it demanded payment and received none.[36] Plaintiff preserved its PACA trust rights by including the statutory language on every invoice.[37] Also on every invoice, Plaintiff included the

---

[29] Dkt. No. 17 at 6 (citing Dkt. No. 1 at 3, ¶ 5); *see* 7 U.S.C. § 499a(b)(9).
[30] *Aguacates Seleccionados JBR USA, LLC v. Bucks Fresh Produce, LLC*, No. 7:19-cv-338, 2020 WL 2193501, at *6 (S.D. Tex. May 6, 2020) (Alvarez, J.) (footnote omitted); *see Sunterra Distrib., LLC v. Castros Distrib. LLC*, No. 3:18-cv-2783-S, 2019 WL 4418320, at *6 (N.D. Tex. Aug. 22, 2019) (collecting cases); *In re Delta Produce, LP*, 521 B.R. 576, 584 n.5 (W.D. Tex. 2014), *aff'd in relevant part*, 845 F.3d 609 (5th Cir. 2016).
[31] Dkt. No. 1 at 3, ¶ 8.
[32] Dkt. No. 1-1 at 2–3.
[33] Dkt. No. 1 at 2, ¶ 4; *see Dealer*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Someone who purchases goods or property for sale to others; a retailer."); *Broker*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An agent who acts as an intermediary or negotiator, esp. between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation.").
[34] Dkt. No. 1 at 3, ¶ 8.
[35] *E.g.*, Dkt. No. 1-1 at 2.
[36] Dkt. No. 1 at 4, ¶¶ 11, 13.
[37] *Id.* ¶¶ 12, 14 (citing Dkt. No. 1-1); *see* 7 U.S.C. § 499e(c)(4).

line, "Payment Terms Net 10 days."[38] The Court assumes this is the time allotted for acceptance of payment, which does not exceed the maximum amount of time allowed by PACA.[39] Furthermore, there is no statute of limitations for a PACA claim, so Plaintiff's complaint was timely filed.[40] Even if a statute of limitations applies,[41] it would be four years,[42] and the earliest conduct Plaintiff's 2022 complaint references occurred in 2019,[43] so all of Plaintiff's causes of action are not time-barred.

With respect to Defendant Gustavo Adolfo Ponce Reyes's individual liability, the Fifth Circuit established that PACA liability extends to an agricultural business's controller.[44] Plaintiff alleges that Gustavo Adolfo Ponce Reyes owned at least 10% of Ponce Produce and managed its daily operations.[45] Plaintiff further alleges that Defendant Gustavo Adolfo Ponce Reyes "directed the disbursement of trust funds for purposes other than making full and prompt payment to Plaintiffs as required by PACA" and thereby breached his fiduciary duties under PACA.[46] These allegations are sufficient to implicate Defendant Gustavo Adolfo Ponce Reyes's individual liability to Plaintiff for violating PACA.

---

[38] Dkt. No. 1-1.
[39] *See* 7 U.S.C. § 499b(4); 7 C.F.R. § 46.2(aa)(5); 7 C.F.R. § 46.46(e)(2). Invoices included a "Due Date" that was twenty-one days after payment. *E.g.*, Dkt. No. 1-1 at 8. Even if this is the governing payment term, it does not exceed the thirty days allowed under PACA's implementing regulations.
[40] *Flavor-Pic Tomato Co. v. Gambino*, No. CV 15-5826, 2016 WL 1268359, at *3 (E.D. La. Mar. 31, 2016) (citing 7 C.F.R. § 46.46(c)(1)); *Woerner Produce Co. v. So Good Potato Chip Co.*, 124 B.R. 298, 299 (Bankr. E.D. Mo. 1991) (citing 7 U.S.C. § 499e(c)(4)).
[41] *See Flavor-Pic Tomato Co.*, 2016 WL 1268359, at *4 (citing *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005)).
[42] *Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217, 220 (3d Cir. 2004) (citing *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)); *Dunmore v. Chi. Title Ins. Co.*, 400 S.W.3d 635, 640 (Tex. App.—Dallas 2013, no pet.).
[43] Dkt. No. 1 at 3, ¶ 8.
[44] *E.g.*, *Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 318–19 (5th Cir. 2020); *Ruby Robinson Co. v. Herr*, 453 F. App'x 463, 465–66 (5th Cir. 2011) (per curiam).
[45] Dkt. No. 1 at 3, ¶ 5.
[46] *Id.* at 7, ¶¶ 29–30.

With respect to Plaintiff's breach of contract claim, "[t]he elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach."[47] Plaintiff alleges the existence of Defendant's agreement to purchase fresh produce from Plaintiff on credit, Plaintiff's delivery of said produce, and Defendant's failure to pay despite demand.[48] These allegations are sufficient to establish a breach of contract.

Plaintiff lastly seeks attorney fees and prejudgment interest.[49] The Fifth Circuit has explicitly sanctioned the collection of attorney fees in connection with a PACA claim,[50] and has implicitly sanctioned the collection of prejudgment interest for the same reasons.[51] Plaintiff's sales invoices included language that the buyer "agrees to pay interest of 1 1/2% per month on the unpaid balance and all collection costs including attorney's fees,"[52] which sustains Plaintiff's claim for interest and attorney fees.[53]

The Court therefore finds that Plaintiff's claims are substantively meritorious. The Court now turns to whether default judgment is proper.

    2. *Whether Default Judgment is Proper*

As established above, there do not appear to be any lingering issues of material fact or questions as to whether the grounds for default are clearly established. Because Plaintiff's process server served Defendants with process directly upon Gustavo Adolfo Ponce Reyes in his individual

---

[47] *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied) (quotations omitted).
[48] Dkt. No. 1 at 7–8, ¶¶ 32–35.
[49] Dkt. No. 17 at 6–7; Dkt. No. 1 at 8–9, ¶¶ 37–42.
[50] *Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 319–20 (5th Cir. 2020).
[51] *See id.* (citing, *inter alia*, *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632–33 (11th Cir. 2004)).
[52] Dkt. No. 1-1 at 3.
[53] *See Pryor*, 953 F.3d at 320; *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 351 (5th Cir. 2015) ("Courts often look to invoices when fixing prejudgment interest."); *Ideal Sales, Inc. v. McGriff*, No. 3:95-cv-0991-R, 1997 WL 148043, at *5 (N.D. Tex. Mar. 26, 1997).

capacity and in his capacity as an officer of Ponce Produce,[54] and because the clerk's entry of default was mailed to Defendants,[55] Defendants' default does not appear caused by any good faith mistake or excusable neglect. Accordingly, the Court finds that there is no undue harshness of a default judgment, no undue prejudice to Defendants, and that the Court would not think itself obliged to set aside a default judgment upon either Defendants' appearance or motion.[56] The Court holds that entry of default judgment is proper. The Court turns finally to the measure of appropriate relief.

### 3. Appropriate Relief

Plaintiff prays for,[57] and moves for $19,582.50 in principal amount due on unpaid invoices.[58] Plaintiff also prays for pre- and postjudgment interest at the contractual rate,[59] which is 1.5% per month.[60] A member of Plaintiff offers a spreadsheet of calculated prejudgment interest which he authenticates as true and correct,[61] and which appears correct to the Court, establishing $9,557.49 as all accrued prejudgment interest through April 15, 2022, with additional interest accruing at $9.66 per day on all unpaid invoices,[62] for a total of $9,605.79 through April 20th.

Further, the Court finds that, because Plaintiff asserted causes of action for dissipation of trust assets and breach of fiduciary duty under PACA, whereas Plaintiff is a qualified and perfected PACA trust beneficiary, the judgment shall be nondischargeable in any of Defendants' bankruptcy proceedings under 11 U.S.C. § 523(a)(4).

---

[54] Dkt. Nos. 10–11.
[55] *See* Dkt. No. 14.
[56] *See supra* note 21.
[57] Dkt. No. 1 at 9–10, ¶¶ a–b.
[58] Dkt. No. 17 at 7–8.
[59] Dkt. No. 1 at 9–10, ¶¶ a–b.
[60] *See supra* note 52 and accompanying text.
[61] Dkt. No. 18 at 2, ¶ 6.
[62] Dkt. No. 18-2.

Plaintiff does not move for any attorney fees in the instant motion,[63] or offer any amount of attorney fees or even attorney hourly rate in its proposed order[64] or declaration.[65] In the absence of any motion for attorney fees, the Court refrains from awarding them at this time.

Plaintiff lastly seeks "continuing post-judgment interest at the parties' contractual rate."[66] However, invoices that merely establish a 1.5% monthly interest rate do not unequivocally contract around the statutory postjudgment interest rate.[67] Therefore, the Court will award postjudgment interest at the rate for the calendar week preceding the date of judgment,[68] specifically 1.77% per annum.[69]

Accordingly, the Court holds that Plaintiff is entitled to judgment in the amount of **$29,188.29**, plus postjudgment interest under 28 U.S.C. § 1961, against Defendants jointly and severally. A final judgment will follow.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 20th day of April 2022.

_____
Micaela Alvarez
United States District Judge

---

[63] Dkt. No. 17 at 7–8.
[64] *See* Dkt. No. 17-1.
[65] *See* Dkt. No. 18.
[66] Dkt. No. 17 at 7; *accord* Dkt. No. 1 at 9–10, ¶¶ a–b.
[67] *Celtic Marine Corp. v. James C. Just. Cos.*, 593 F. App'x 300, 306 (5th Cir. 2014) (per curiam).
[68] 28 U.S.C. § 1961(a).
[69] UNITED STATES DISTRICT & BANKRUPTCY COURT, SOUTHERN DISTRICT OF TEXAS, POST-JUDGMENT INTEREST RATES, https://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited Apr. 18, 2022).